**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| TAMYRA FOREMAN : | |
| 61 Manheim Street : | |
| Philadelphia, PA 19144 : | CIVIL ACTION NO.: _____ |
| : | |
| Plaintiff, : | JURY TRIAL DEMANDED |
| : | |
| v. : | |
| : | |
| THE CITY OF PHILADELPHIA, : | |
| MEDICAL EXAMINER'S OFFICE : | |
| 400 N. Broad Street : | |
| Philadelphia, PA 19130 : | |
| : | |
| Defendant. : | |

---

## COMPLAINT – CIVIL ACTION

Plaintiff Tamyra Foreman ("Plaintiff"), by and through her undersigned attorney, for her Complaint against Defendant The City of Philadelphia, Medical Examiner's Office d/b/a Medical Examiner's Office ("MEO" and/or "Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff brings this Complaint contending that Defendant discriminated against her and ultimately terminated her employment because of her disability, past record of impairment, and/or because Defendant regarded her as disabled, failed to provide her with a reasonable accommodation in connection with her disability, and/or retaliated against her for requesting a reasonable accommodation in connection thereto, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*

2. Plaintiff further contends violations by Defendant of Pennsylvania public policy for asserting her rights under the Pennsylvania Workers' Compensation Act.

## PARTIES

3. Plaintiff Tamyra Foreman is a citizen of the United States and Pennsylvania, and currently maintains a residence at 61 Manheim Street, Philadelphia, PA 19144.

4. Defendant The City of Philadelphia, Medical Examiner's Office d/b/a Medical Examiner's Office is organized and existing under the laws of the Commonwealth of Pennsylvania with an office address registered as 400 N. Broad Street, Philadelphia, PA 19130.

## JURISDICTION AND VENUE

5. On or around July 2, 2021, Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission (the "EEOC"), thereby satisfying the requirements of 42 U.S.C. § 12117(a); 2000e-5(b) and (e).  Plaintiff's EEOC Charge was docketed as Charge No. 530-2021-04023.  Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practices alleged herein.

6. On January 27, 2022, the EEOC issued a Determination and Notice of Rights to Sue advising that Plaintiff has ninety (90) days to file her lawsuit.

7. On or about April 11, 2022, within the relevant statutory timeline, Plaintiff filed the instant matter.

8. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as Plaintiff's federal law claims.

12. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

13. Paragraphs 1 through 12 are hereby incorporated by reference as though the same were fully set forth at length herein.

14. Defendant hired Plaintiff on or about November 2, 2020 for the position of Forensic Technician.

15. On or around November 5, 2020, Plaintiff sustained a workplace injury to her neck and shoulder while lifting a decedent.

16. Accordingly, on or around November 5, 2020, Plaintiff filed a Workers' Compensation claim in connection thereto.

17. Plaintiff's neck and shoulder injuries are disabilities within the meaning of the ADA and PHRA in that they substantially limit one of more major life activity, over a substantial period of time.

18. In or around early or mid-November, 2020, Defendant became aware of Plaintiff's workplace injury and disabilities, in addition to Plaintiff's Workers' Compensation claim.

19. Suddenly, and only after receiving notice of Plaintiff's disabilities and Workers' Compensation claim, Defendant ceased training Plaintiff altogether.

20. In or around mid-November, 2020, as a result of this, Plaintiff complained to her Supervisor, Aleesha Cartier ("Ms. Cartier), stating, "I feel like I am being hazed."

21. On or around November 13, 2020, Plaintiff was evaluated for her injuries, whereby it was opined that Plaintiff was to begin physical therapy and could return to work, with restrictions.

22. Specifically, Plaintiff was restricted to not "lifting and carrying anything above five (5) pounds with right hand/arm."

23. On or around November 16, 2020 Plaintiff attended physical therapy.

24. On or around November 16, 2020, Plaintiff's five (5) pound restriction was altered to a ten (10) pound restriction.

25. In or around this same time period, Plaintiff returned to work and requested a reasonable accommodation of not having Plaintiff lift, carry, push, and/or pull anything in excess ten (10) pounds in connection with her doctor's orders.

26. More specifically, Plaintiff requested the aforementioned reasonable accommodation with Ms. Cartier and provided doctor's notes detailing the same.

27. Despite this, Defendant refused to comply with Plaintiff's requested reasonable accommodation.

28. Additionally, Defendant failed to engage in an interactive process in order to determine a reasonable accommodation and ignored Plaintiff's requests.

29. Instead, Defendant forced Plaintiff to engage in work tasks that clearly contradicted Plaintiff's restrictions and her requested accommodations.

30. By way of one such example, Defendant required Plaintiff to push and/or pull decedent's bodies, which clearly weighed more than ten (10) pounds.

31. As a result, Plaintiff complained to Defendant's Union Leader, Kim Last Name Unknown ("Kim LNU").

32. Shortly after Plaintiff's complaints to Kim LNU, Ms. Cartier blanketly stated, in a condescending tone, "We have no light duty here"

33. In addition, after Plaintiff requested a reasonable accommodation, Defendant's staff, including Ms. Cartier began displaying hostility and disrespectful attitudes towards Plaintiff.

34. In or around late December, 2020 or early January 2021, Defendant suddenly required Plaintiff to obtain and submit an additional doctor's note which specified that Plaintiff's ten (10) pound lifting and carrying restriction included "pushing and pulling."

35. Shortly thereafter, Plaintiff visited her doctor, who stated that it was "common sense that a ten (10) pound lifting and carrying restriction would also include/mean pushing and pulling anything in excess of the ten (10) pounds."

36. Despite being common sense, Plaintiff's doctor provided her the additional doctor's note, which Plaintiff in turn provided to Defendant.

37. Even after providing this additional information, Defendant still refused to engage in any interactive process whatsoever to determine a reasonable accommodation and still required Plaintiff to push and pull decedent's bodies.

38. In or around January 5, 2021, Plaintiff complained yet again regarding her restrictions and Defendant's failure to attempt to accommodate her disabilities.

39. Notably, on the very day of Plaintiff's complaint, Defendant terminated Plaintiff.

40. Defendant's alleged reason for Plaintiff's termination was "clerical errors."

41. Plaintiff was never made aware of any prior "clerical errors" during the course of her employment.

42. Defendant could have reasonably accommodated Plaintiff's disabilities, had Defendant engaged in an interactive process.

43. Plaintiff is a qualified individual with a disability within the meaning of the ADA and/or PHRA in that she was capable of performing the essential functions of her job with or without a reasonable accommodation, including, but not limited to a brief medical leave of absence and/or modification of non-essential tasks.

44. It is believed and therefore averred that Defendant terminated Plaintiff because of her actual disability, past record of impairment, and/or because it regarded Plaintiff as disabled within the meaning of the ADA and PHRA.

45. Defendant failed to engage in the interactive accommodation process required under the ADA and PHRA and terminated Plaintiff in retaliation for her requests for an accommodation and complaints in connection thereto.

46. It is believed and therefore averred that Defendant terminated Plaintiff in retaliation for Plaintiff exercising her right to seek workers' compensation benefits in connection with her work-related injuries.

47. It is believed as therefore averred that Defendant willfully violated Pennsylvania public policy by retaliating against Plaintiff for asserting her rights under the Pennsylvania Workers' Compensation Act.

48. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, lost employee

benefits, lost earnings and earnings potential, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, and humiliation.

49. Additionally, as a result of Defendant's willfully unlawful practices described above, Plaintiff has suffered damages.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION, RETALIATION, & FAILURE TO ACCOMMODATE

50. Paragraphs 1 through 49 are hereby incorporated by reference as though the same were fully set forth at length herein.

51. At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the ADA.

52. At all times relevant hereto, Defendant employed at least fifteen (15) employees.

53. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

54. Defendant was aware of Plaintiff's disability, record of impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

55. Upon information and belief, Plaintiff has since been replaced by a non-disabled individual.

56. Defendant failed to engage in an interactive process with Plaintiff to determine whether she could perform the essential functions of her job with or without a reasonable accommodation, such as a brief medical leave of absence or a modification of non-essential tasks.

57. By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees have violated the ADA by terminating Plaintiff because of her disability, her

record of disability/impairment, because they regarded her as being disabled within the meaning of the ADA, and/or in retaliation for requesting a reasonable accommodation for her disability.

58. As a result of Defendant' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and employee benefits in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

b) Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

c) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

d) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

e) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

**COUNT II**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951,** *et seq.*
**DISCRIMINATION, RETALIATION, & FAILURE TO ACCOMMODATE**

59. Paragraphs 1 through 58 are hereby incorporated by reference as though the same were fully set forth at length herein.

60. Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of the protected rights of Plaintiff.

61. Plaintiff is a qualified individual with a disability within the meaning of the PHRA in that, at all times relevant hereto, she suffered from one or more physical conditions which substantially limited her in one or more major life activities, as stated above.

62. Plaintiff was/is able to perform the essential functions of her job with or without a reasonable accommodation.

63. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of her actual and/or perceived disabilities and in retaliation for her requests for reasonable accommodations in connection thereto.

64. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Compensatory damages in an amount to be determined at trial;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

d)      Pre-judgment interest in an appropriate amount; and

e)      Such other and further relief as is just and equitable under the circumstances.

## COUNT III
## PENNSYLVANIA PUBLIC POLICY
## PENNSYLVANIA WORKERS' COMPENSATION ACT
## <u>DISCRIMINATION AND RETALIATION</u>

65.      Paragraphs 1 through 66 are hereby incorporated by reference as though the same were fully set forth at length herein.

66.      On or around November 5, 2020, during the course and scope of her employment, Plaintiff suffered a work-related injury.

67.      Plaintiff's work-related injury caused Plaintiff to require medical care and treatment.

68.      Plaintiff provided Defendant with notice of the work-related injury and reported the work-related injury to Defendant's workers' compensation doctor that she was directed to visit.

69.      Defendant unlawfully violated the public policy exception to Pennsylvania's common law tradition of at-will employment by unlawfully terminating Plaintiff's employment in retaliation for Plaintiff's decision to avail herself of the benefits of the Pennsylvania Workers' Compensation Law.

70.      Plaintiff's termination was in violation of public policy pursuant to Pennsylvania common law.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000);

b) Compensatory damages and lost benefits;

c) Punitive damages for Defendant's unlawful practices which were committed with malicious and reckless indifference to Plaintiff's rights;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:  */s/ Andrew J. Schreiber*
Andrew J. Schreiber, Esq.
Michael Murphy, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
aschreiber@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com
Attorneys for Plaintiff

**Dated:** April 7, 2022

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.